Filed 12/21/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D073034 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD266542) |
| ROBERT L. HAMILTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Esteban Hernandez, Judge. Reversed.

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kelley Johnson and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

Summer Stephan, District Attorney, Mark A. Amador, Chief Deputy District Attorney, Chryseis Starros, Deputy District Attorney for San Diego County District Attorney as Amicus Curiae.

A jury convicted former United States Postal Service employee Robert L. Hamilton of three counts of making a false or fraudulent statement for the purpose of obtaining compensation under the California workers' compensation law in violation of Insurance Code section 1871.4, subdivision (a)(1).

Hamilton makes two arguments on appeal. First, he contends that because, as a federal employee, his workers' compensation benefits were provided under the Federal Employment Compensation Act (5 U.S.C. §§ 8101-8152) (FECA), the doctrine of federal preemption bars him from being prosecuted under California law for any offense alleging fraud in obtaining federal workers' compensation benefits under FECA. Second, Hamilton contends that regardless of whether the prosecution is preempted, insufficient evidence supports his conviction under Insurance Code section 1871.4, subdivision (a)(1) because that statute applies only to false or fraudulent statements made for the purpose of obtaining compensation afforded under the California workers' compensation law, which was not applicable to him as a federal employee.

On the issue of federal preemption, we conclude that Hamilton has not met his burden to establish that the People's prosecution of him is preempted. With respect to the sufficiency of the evidence, we agree with the People's concession that insufficient evidence supports Hamilton's convictions because he did not receive compensation under the California workers' compensation law. Finally, we decline to exercise our discretion to modify the judgment to impose convictions on a lesser included offense. Accordingly, the judgment is reversed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Hamilton was working as a letter carrier for the United States Postal Service when he was injured on the job on November 28, 2014, due to slipping and falling while delivering packages. After Hamilton completed a federal form describing the nature of his injury and how it occurred, Hamilton was referred to a doctor by the United States Department of Labor. The doctor noted that Hamilton complained of pain in his back and his knees due to the injury. Over the next several months, Hamilton continued to visit the doctor, who completed federal forms attesting to Hamilton's inability to return to work due to persistent medical problems. Among other things, the doctor's evaluation of Hamilton's inability to return to work was based on Hamilton's statement that he could drive only short distances, had persistent pain which required the use of narcotics, and needed to use a cane or walker to get around.

Based on Hamilton's temporary total disability as attested to by the doctor, beginning on January 13, 2015, Hamilton began receiving wage replacement

3

compensation from the United States Department of Labor under FECA (5 U.S.C. §§ 8101-8152), which provides the remedy for a federal employee's work-related injury.[1]

After a co-worker saw Hamilton at a casino in March 2015, a federal agent was assigned to conduct surveillance of Hamilton. The surveillance revealed that Hamilton was able to perform certain physical acts that he told his doctor were impossible. Specifically, the doctor was shown surveillance videos of Hamilton and concluded that Hamilton had exaggerated or misrepresented some aspects of his medical condition.

After Hamilton became aware that he was being investigated, he returned to work on August 26, 2015, and then retired on September 1, 2015. Thus, Hamilton received wage replacement compensation from the Department of Labor pursuant to FECA from January 13 to August 25, 2015.

The District Attorney in San Diego County filed a criminal complaint against Hamilton on April 13, 2016, which charged Hamilton with eight counts of violating Insurance Code section 1871.4, subdivision (a)(1). After a preliminary hearing, the court

---

[1]     FECA provides that "[t]he United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . ." (5 U.S.C. § 8102, subd. (a).) As explained at trial by a supervisory workers' compensation claims examiner for the United States Department of Labor, the federal workers' compensation law set forth in FECA (5 U.S.C. §§ 8101-8152) and accompanying regulations (20 C.F.R. §§ 10.0-10.916) are separate from the California workers' compensation system. FECA is enforced by the Department of Labor. The United States Treasury forwards funds to the Department of Labor to make payouts to a federal employee on a workers' compensation claim, and the federal agency for whom the employee works eventually reimburses the Department of Labor for the payments from that agency's budget. Injured federal workers who are totally temporarily disabled generally receive 75 percent of their base pay on a tax-free basis.

4

found probable cause for only three of the counts, and an information was filed alleging three counts based on Insurance Code section 1871.4, subdivision (a)(1). Specifically, as stated in the jury instructions, the three counts were based on Hamilton's alleged misrepresentations to the doctor on May 20, May 27, and July 10, 2015 about his use of a cane or walker and about the limitations on the distance he could drive in light of the pain he was experiencing.

The jury found Hamilton guilty on all three counts. The trial court placed Hamilton on formal probation for a period of three years and ordered that he serve 180 days in custody, with the intention that Hamilton serve the term of custody in home detention with electronic monitoring, if he was eligible. Among other things, the trial court also ordered that Hamilton pay $11,972 in victim restitution to the United States Department of Labor.

II.

DISCUSSION

A.    *Federal Preemption Does Not Prevent State Law Prosecutions Based on a Federal Employee's Fraud in Obtaining Compensation Under FECA*

We first consider Hamilton's contention that the People are barred by the doctrine of federal preemption from prosecuting him for any state law violation committed when he wrongfully obtaining benefits under FECA.[2]

"The supremacy clause of the United States Constitution establishes a constitutional choice-of-law rule, makes federal law paramount, and vests Congress with the power to preempt state law. . . . There are four species of federal preemption: express, conflict, obstacle, and field. . . . [¶] First, express preemption arises when Congress 'define[s] explicitly the extent to which its enactments pre-empt state law. [Citation.] Pre-emption fundamentally is a question of congressional intent, [citation], and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.' . . . Second, conflict preemption will be found when simultaneous compliance with both state and federal directives is impossible. . . . Third, obstacle preemption arises when ' "under the circumstances of [a] particular case, [the

---

[2]    The People contend that Hamilton has waived his preemption argument by failing to raise it in the trial court, but they provide no applicable authority to support the contention, instead citing case law arising in a civil litigation context. "Congress may, if it so chooses, preempt state criminal regulation of particular acts. . . . These limits are substantive, not jurisdictional, and relate only to whether a state legislature can punish given conduct." (*In re Jose C.* (2009) 45 Cal.4th 534, 544-545, fn. 2, citations omitted.) The People have cited no authority that would allow us to conclude that a criminal defendant waives the ability to argue on appeal that he has been convicted for engaging in conduct that the state has no authority to punish.

challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' . . . Finally, field preemption, i.e., 'Congress' intent to pre-empt all state law in a particular area,' applies 'where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation.' . . . [¶] ' "[C]ourts are reluctant to infer preemption, and it is the burden of the party claiming that Congress intended to preempt state law to prove it." ' " (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 935-936, citations omitted.)

Here, Hamilton contends that two types of preemption apply. Specifically, Hamilton contends that field preemption applies because, in enacting FECA, Congress intended to occupy the field of anything related to FECA, including prosecution of state law crimes that may be committed by a federal employee who wrongfully obtains payments under FECA. Second, Hamilton contends that obstacle preemption applies because "permitting the several states to enforce their own laws wherever they believe Federal employees have improperly obtained benefits under the FECA would operate as an obstacle to the Congressional objective of uniform regulation in enacting this comprehensive Federal program."

With respect to both of these types of preemption, Hamilton points out "it is important to keep in mind that Congress has not only set forth what benefits the injured Federal worker is entitled, but also a full array of sanctions including criminal prosecution and civil and administrative actions which may be taken against someone

7

who wrongfully obtains benefits."  The range of federal sanctions is summarized in the

regulations promulgated by the Department of Labor concerning FECA:

> "(a) A number of statutory provisions make it a crime to file a false or
> fraudulent claim or statement with the Government in connection with a
> claim under the FECA, or to wrongfully impede a FECA claim.  Included
> among these provisions are 18 U.S.C. 287, 1001, 1920, and 1922.
> Furthermore, a civil action to recover benefits paid erroneously under the
> FECA may be maintained under the False Claims Act, 31 U.S.C. 3729-
> 3733.  Enforcement of such provisions that may apply to claims under the
> FECA is within the jurisdiction of the Department of Justice.
>
> "(b) In addition, administrative proceedings may be initiated under the
> Program Fraud Civil Remedies Act of 1986 (PFCRA), 31 U.S.C. 3801-12,
> to impose civil penalties and assessments against persons who make,
> submit, or present, or cause to be made, submitted or presented, false,
> fictitious or fraudulent claims or written statements to OWCP in connection
> with a claim under the FECA.  The Department of Labor's regulations
> implementing the PFRCA are found at 29 CFR part 22."  (20 C.F.R.
> § 10.16.)

Hamilton does not expressly separate out his arguments for field preemption and

obstacle preemption.  The focus of Hamilton's arguments for both types of preemption is

his contention that federal authorities should be able to decide what sort of sanctions are

applied when an employee fraudulently obtains benefits and should be able to decide

whether the case warrants sanctions at all.  "What enforcement route is taken in any

particular case is a delicate balance struck by the United States Postal Service,

Department of Labor and United States Department of Justice.  Presumably they would

do so with an eye that Postal Service employees in the fifty states and territories will be

treated in a similar fashion depending on the length of their service and nature of their

transgression.  This is possible only if one jurisdiction determines how such matters are

to be handled.  [¶]  It would not be possible if all fifty states could determine for

8

themselves whether to seek criminal prosecution of a Federal employee under their individual state laws. . . . [¶] . . . This would frustrate federal policies by allowing criminal charges under state law even where the federal officials in charge of administering the comprehensive FECA scheme determine that criminal prosecution is not appropriate."  Linking this contention to both his field preemption and obstacle preemption arguments Hamilton states, "The subject matter of what is being regulated, benefits for Federal employees, the extent to which Congress has opted to regulate it and the importance that regulation remain uniform and not subject to the laws of various state jurisdictions, makes it clear that the United States has *occupied the field* of the regulation of workers['] compensation benefits for Federal employees and that any supplemental regulation in the form of State criminal prosecution *would operate as an obstacle* to the need for uniform regulation of this area."  (Italics added.)

In response, the People point out that in enacting FECA, Congress expressly indicated its intention that a state law criminal statute could be used to prosecute a federal employee who committed fraud in obtaining benefits from the federal government under FECA.  Specifically, in authorizing the forfeiture of benefits wrongfully obtained by a federal employee under FECA, Congress enacted the following provision:

> "(a) Any individual convicted of a violation of section 1920 of title 18, or any other Federal *or State criminal statute* relating to fraud in the application for or receipt of any benefit under this subchapter or subchapter III of this chapter, shall forfeit (as of the date of such conviction) any entitlement to any benefit such individual would otherwise be entitled to under this subchapter or subchapter III for any injury occurring on or before the date of such conviction.  Such forfeiture shall be in addition to any action the Secretary may take under section 8106 or 8129." (5 U.S.C § 8148, subd. (a), italics added.)

9

In addition, a regulation promulgated by the Department of Labor recognizes that a person who commits fraud in obtaining benefits under FECA can be prosecuted under state law, and it provides that the FECA benefits of such a person will be immediately terminated. "When a beneficiary either pleads guilty to or is found guilty on either Federal *or State criminal charges* of defrauding the Federal Government in connection with a claim for benefits, the beneficiary's entitlement to any further compensation benefits will terminate effective the date of conviction, which is the date of the verdict or, in the case of a plea bargain, the date the claimant made the plea in open court (not the date of sentencing or the date court papers were signed)." (20 C.F.R. § 10.17, italics added.)

"In determining whether federal law preempts state law, a court's task is to discern congressional intent." (*Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 955.) "Historically, the United States Supreme Court and this court have conducted the search for congressional intent through the lens of a presumption *against* preemption." (*Quesada v. Herb Thyme Farms, Inc.* (2015) 62 Cal.4th 298, 312 (*Quesada*), italics added.) The focus on Congressional intent holds true for both field preemption and obstacle preemption. (*Ibid*.)

In enacting the provision of FECA we have set forth above, which expressly recognizes that a federal employee may be prosecuted under state law for committing fraud in obtaining benefits under FECA (5 U.S.C. § 8148, subd. (a)), Congress has unambiguously expressed its *intent* to approve such a state law prosecution. In so doing,

10

Congress has indicated that it does *not* intend for FECA to occupy the field concerning the prosecution of fraud in obtaining FECA benefits.[3]

Further, because Congress has identified a state law fraud conviction as one basis for the federal government to obtain forfeiture of benefits wrongfully obtained under FECA, Congress has impliedly recognized that a state law prosecution does not stand as an *obstacle* to its goals in enacting FECA. (See *Quesada*, *supra*, 62 Cal.4th at p. 312 [establishing the existence of obstacle preemption requires "reason to discount the possibility the Congress that enacted the legislation was aware of the background tapestry of state law and content to let that law remain as it was"].) Indeed, instead of erecting an *obstacle* to FECA, allowing state law prosecutions to go forward serves to *further* the goals of FECA because those prosecutions enable the federal government to pursue a forfeiture of benefits from persons convicted of committing fraud in obtaining them. Similarly, as demonstrated by the Department of Labor's regulation, state law prosecutions for fraud also further the goals of FECA because they provide the federal government with a means for terminating future FECA benefits when an employee has committed fraud. In short, the language of FECA itself serves as strong evidence that

---

[3]    Consistent with our view, one court has observed in dicta that "[section] 8148 [of FECA] does not assume that the federal workers' compensation scheme preempts state action against a person who commits fraud. On the contrary, it assumes that the federal workers' compensation scheme does *not* preempt state action." (*State v. Jones* (Utah Ct.App. 1998) 958 P.2d 938, 942, fn. 4 [discussing the preemption issues raised by 5 U.S.C. § 8148 while considering the related issue of whether a state law prosecution for fraud in obtaining federal disability retirement benefits (5 U.S.C §§ 8451-8456) is preempted].)

11

Congress intended and expected that state law prosecution for fraud would *facilitate* the federal government's enforcement of FECA rather than standing as an obstacle to it.

Moreover, although Hamilton argues that Congress has an interest in "uniform regulation" of FECA, allowing state law prosecutions for fraud in obtaining FECA benefits does not undermine the interest of uniform regulation because such prosecutions impose no different or conflicting regulations with respect to FECA. Contrary to what Hamilton contends, a state law fraud prosecution does not serve to determine "when the injured federal worker is entitled to such benefits, what benefits they are entitled and for how long." Instead, a state law fraud prosecution determines the extremely limited question of whether a federal employee has made misrepresentations or otherwise committed fraud in obtaining FECA benefits. Such a state law prosecution necessarily must be premised upon the already-existing *federal* rules and regulations for obtaining FECA benefits, which the state law prosecution would have no reason to alter or call into question.

Hamilton contends that this case is similar to several cases which concluded that state law claims for wrongful conduct in connection with a specific federal statutory scheme were preempted by federal law. We disagree. Even though the case law cited by Hamilton might have supported his preemption argument if FECA did *not* include express language recognizing the possibility of state law prosecutions, because FECA *does* contain such language, the cases relied upon by Hamilton are inapposite. (*Arizona v. U.S.* (2012) 567 U.S. 387 [finding preemption of an Arizona law that made it a crime to fail to comply with federal alien-registration requirements and for an unauthorized

12

alien to seek or engage in work in Arizona because federal law occupied the field of alien registration and the Arizona law stood as an obstacle to the comprehensive federal framework for combating the employment of illegal aliens]; *Buckman Co. v. Plaintiffs' Legal Committee* (2001) 531 U.S. 341, 347-348 [a state law claim for fraud on the Food and Drug Administration brought by a private plaintiff conflicted with and was therefore preempted by federal law because allowing the claim would skew the delicate balance achieved by the FDA in deciding when to punish and deter fraud, and "[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied' "]; *People v. Dillard* (2018) 21 Cal.App.5th 1205, 1223-1224 [a state law prosecution arising from false statements defendants made to the federal Department of Health and Human Services to obtain funds under a federal grant program established by Congress was preempted because the prosecution served as an obstacle to the goal of the federal grant program in that "[t]he threat of state criminal prosecution could deter potential grantees from applying for" a grant, and Congress's manner of crafting the grant program suggested that "Congress believed that punitive measures . . . might often conflict with" its purposes for establishing the grant].)  Hamilton has cited no authority finding preemption where, as here, the federal statute *itself* acknowledged the possibility of a state law prosecution to police fraudulent activity in obtaining benefits under a federal program.

In sum, we conclude that neither field preemption nor obstacle preemption applies to bar a state law prosecution for fraud in obtaining benefits under FECA because Congress expressly intended that such prosecutions would be brought.

13

B.      *The Convictions Are Not Supported by Substantial Evidence*

We next discuss Hamilton's challenge to the sufficiency of the evidence to support each of his three convictions for violating Insurance Code section 1871.4, subdivision (a)(1), which the People concede has merit.

Insurance Code section 1871.4, subdivision (a)(1) makes it a crime to "[m]ake or cause to be made a knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying any *compensation*, as defined in Section 3207 of the Labor Code." (Ins. Code, § 1871.4, subd. (a)(1), italics added.) In turn, Labor Code section 3207 defines compensation as "compensation under this division and includes every benefit or payment conferred by this division upon an injured employee, or in the event of his or her death, upon his or her dependents, without regard to negligence." (Lab. Code, § 3207.) The division of the Labor Code referred to in section 3207 is Division 4 of the Labor Code, which covers California workers' compensation laws, and is titled "Workers' Compensation and Insurance."

As the People concede, the provisions in Division 4 of the Labor Code, when read together, make clear that its provisions do not cover a federal employee of the United States Postal Service. As set forth in Labor Code section 3600, "Liability for the compensation provided by [Division 4]" exists "against an employer for any injury sustained by his or her employees arising out of and in the course of the employment" only "[w]here, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division." (Lab. Code, § 3600, subd. (a)(1).) As stated in Labor Code section 3203, the workers' compensation provisions in Division 4

14

"do not apply to employers or employments which, according to law, are so engaged in interstate commerce as not to be subject to the legislative power of the state, nor to employees injured while they are so engaged, except in so far as these divisions are permitted to apply under the Constitution or laws of the United States." (Lab. Code, § 3203.) The parties do not dispute that United States Postal Service workers are engaged in interstate commerce. (*Bacashihua v. U.S. Postal Service* (6th Cir. 1988) 859 F.2d 402, 405 ["If any class of workers is engaged in interstate commerce, it is postal workers"]; *American Postal Workers Union, AFL-CIO v. U.S. Postal Service* (11th Cir. 1987) 823 F.2d 466, 473 ["[I]f any workers are 'actually engaged in interstate commerce,' the instant postal workers are. They are responsible for dozens, if not hundreds, of items of mail moving in 'interstate commerce' on a daily basis."].)

Further, as we have explained, liability for workers' compensation under the Labor Code applies only "against *an employer* for any injury sustained by his or her employees." (Lab. Code, § 3600, subd. (a)(1), italics added.) The term "employer" is defined as "(a) The State and every State agency[;] (b) Each county, city, district, and all public and quasi-public corporations and public agencies therein[;] (c) Every person including any public service corporation, which has any natural person in service[;] [and] (d) The legal representative of any deceased employer." (Lab. Code, § 3300.) As a federal agency, the United States Post Office does not fall under any of the categories set forth in the statutory definition of "employer."

Accordingly, as the People acknowledge, "[t]he workers['] compensation benefits [Hamilton] received from the U.S. Department of Labor were not 'compensation' under

15

Labor Code section 3207 because they were not conferred by Division 4 of that code. They were conferred under . . . federal law."[4]  The People concede that because Hamilton did not make false or fraudulent statements "for the purpose of obtaining or denying any compensation, as defined in Section 3207 of the Labor Code," as required for a violation of Insurance Code, section 1871.4, subdivision (a)(1), insufficient evidence supports the jury's verdict that he was guilty of three counts of violating Insurance Code section 1871.4, subdivision (a)(1).

C.      *Amendment of the Judgment to Reflect Convictions for Lesser Included Offenses Is Not Warranted*

Finally, we consider the People's contention that we should modify Hamilton's convictions to lesser included offenses, to reflect convictions either under Penal Code section 550, subdivision (b)(3), or attempted petty theft by false pretenses (Pen. Code, §§ 484, 486, 488, 490.2, subd. (a), 532, 664).

_____

[4]      In an amicus brief, the San Diego County District Attorney (District Attorney) disagrees with the People's concession that insufficient evidence supports Hamilton's conviction under Insurance Code section 1871.4, subdivision (a)(1).  The District Attorney argues that Hamilton received "compensation" as defined by Labor Code section 3207 because that provision does not define compensation by referencing the "classification" of the employee who receives the compensation, and thus *any* employee who receives the *types* of benefits provided under the California workers compensation laws, such as "disability payments, vocational rehabilitation, hospital and medical benefits, compromise and release, and payment of salary" receives compensation as defined in Labor Code section 3207.  We disagree.  The District Attorney's argument overlooks crucial wording in Labor Code section 3207, which defines compensation as "compensation *under this division*" and "includes every benefit or payment *conferred by this division*."  (Lab. Code, § 3207, italics added.)  As we have explained, the "division" referred to in Labor Code section 3207 is Division 4 of the Labor Code.  That portion of the Labor Code simply does not confer any benefit or payment on a federal postal worker for the reasons we have identified.

16

Our authority to reduce a conviction to a lesser included offense is based on Penal Code section 1181, subdivision (6), which states that "[w]hen the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed."  (Pen. Code, § 1181, subd. (6).) Similarly, Penal Code section 1260, states that "[t]he court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."  (Pen. Code, § 1260.) Our Supreme Court "has long recognized that under Penal Code sections 1181, subdivision 6, and 1260, an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense."  (*People v. Navarro* (2007) 40 Cal.4th 668, 671, fn. omitted.)  However, as reflected by the statutory language, a court's authority to modify a judgment of conviction to reflect a lesser included offense is permissive, not mandatory.  (*People v. Hill* (1953) 116 Cal.App.2d 212, 216 ["the statute is merely permissive"]; Pen. Code, § 1181, subd. (6) ["the court *may* modify the verdict, finding or judgment accordingly without granting or ordering a

17

new trial," italics added]; Pen. Code, § 1260 ["the court *may . . .* reduce the degree of the offense or attempted offense," italics added].)

We are authorized to reduce a conviction only to a lesser included offense, not a lesser related offense. (*People v. Lagunas* (1994) 8 Cal.4th 1030, 1034, 1040 (*Lagunas*).) Courts "have applied two tests in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228.)[5] " 'Courts should consider the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted, of an *uncharged* crime.' " (*People v. Bailey* (2012) 54 Cal.4th 740, 751.)

Hamilton was convicted of three counts of violating Insurance Code section 1871.4, subdivision (a)(1). Applying the elements test, the elements of that crime are "[m]ak[ing] or caus[ing] to be made a knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying any compensation, as defined in Section 3207 of the Labor Code." (Ins. Code, § 1871.4,

---

[5]    In contrast, "[w]hen an offense 'is closely related to that charged and *the evidence* provides a basis for finding the defendant guilty of the lesser but innocent of the charged offense,' the offense is deemed to be 'lesser related.' " (*Lagunas*, *supra*, 8 Cal.4th at p. 1035, italics added.)

18

subd. (a)(1).)  Applying the accusatory pleading test, each of the three counts in the information allege that on a specific date Hamilton "did unlawfully make and cause to be made a knowingly false and fraudulent material statement and material representation for the purpose of obtaining any compensation as defined in Section 3207 of the Labor Code, to wit:  Misrepresented his physical condition to [the doctor]."

According to the People, we should modify Hamilton's convictions to reflect violations of section 550, subdivision (b)(3) of the Penal Code because that crime is a lesser included offense of Insurance Code section 1871.4, subdivision (a)(1).  Penal Code section 550, subdivision (b)(3) makes it a crime to "[c]onceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled."  (Pen. Code, § 550, subd. (b)(3).)

Hamilton does not agree that Penal Code section 550, subdivision (b)(3) is a lesser included offense of Insurance Code section 1871.4, subdivision (a)(1).  The dispute centers on two issues.  First, Hamilton contends that "[c]onceal[ing], or knowingly fail[ing] to disclose the occurrence of, an event" as required by Penal Code section 550, subdivision (b)(3) is not the same as "[m]ak[ing] or caus[ing] to be made a knowingly false or fraudulent material statement or material representation" as required by Insurance Code section 1871.4, subdivision (a)(1).  Second, Hamilton contends that when the jury found fraud *for the purpose of obtaining compensation under the California workers' compensation law*, as set forth in Insurance Code section 1871.4, subdivision (a)(1), it did not necessarily find fraud affecting the "initial or continued right or entitlement *to any*

19

*insurance benefit or payment*" (Pen. Code, § 550, subd. (b)(3), italics added). With respect to that issue, the main question is whether compensation provided under the California workers' compensation law can, in all instances, be described as an insurance benefit or payment.[6]

We need not resolve the dispute over whether Penal Code section 550, subdivision (b)(3) is a lesser included offense of Insurance Code section 1871.4, subdivision (a)(1). Even if we were to conclude that Penal Code section 550, subdivision (b)(3) is a lesser included offense, there would be no reason to modify the judgment to that crime because substantial evidence does not support a finding that Hamilton violated Penal Code section 550, subdivision (b)(3). To be guilty of violating Penal Code section 550, subdivision (b)(3), Hamilton must be found to have concealed or withheld information affecting the "initial or continued right or entitlement to any insurance benefit or payment." (Pen. Code, § 550, subd. (b)(3).) Here, the payments and benefits that Hamilton obtained were provided under FECA. We are aware of no basis to conclude that a benefit provided under FECA is an "insurance benefit or payment" within

---

[6] The issue was addressed in a different context in *Denny's Inc. v. Workers' Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433, which concluded that an employer self-insured for workers' compensation was an "insurer" based on the definition appearing in Labor Code section 3211. (*Denny's*, at 1440 [concluding that because a self-insured employer was an insurer, the California Insurance Guarantee Association was not obligated to guarantee a disability claim as that obligation does not apply when a solvent workers' compensation insurer is jointly and severally liable (Ins. Code, § 1063.1, subd. (c)(9))].) As defined in Labor Code section 3211: " 'Insurer' includes the State Compensation Insurance Fund and any private company, corporation, mutual association, reciprocal or interinsurance exchange authorized under the laws of this State to insure employers against liability for compensation and any employer to whom a certificate of consent to self-insure has been issued."

20

the meaning of Penal Code section 550, subdivision (b)(3).[7] As the evidence at trial

established, FECA is a federal program for providing compensation to federal workers

who receive workplace injuries. The wage replacement paid by FECA to the worker is

not paid by an insurance company, but instead is paid by the Department of Labor

through funds obtained from the United States Treasury. Accordingly, evidence that

Hamilton committed fraud in obtaining benefits from the federal government through

FECA does not support a finding that Hamilton committed fraud in obtaining an

---

[7]     As we have set forth, Penal Code section 550, subdivision (b)(3) makes it a crime
to "[c]onceal, or knowingly fail to disclose the occurrence of, an event that affects any
person's initial or continued right or entitlement to any insurance benefit or payment, *or
the amount of any benefit or payment to which the person is entitled*." (Pen. Code, § 550,
subd. (b)(3), italics added.) Apparently recognizing that benefits obtained under FECA
do not constitute an "insurance benefit or payment" as that term is used in Penal Code
section 550, subdivision (b)(3), the People asserted for the first time at oral argument that
Penal Code section 550, subdivision (b)(3) nevertheless applies here because Hamilton
violated the *second* clause in that statutory provision (italicized above), which makes it a
crime to conceal or fail to disclose an event that affects "the amount of any benefit or
payment to which the person is entitled." (*Ibid*.) The People contend that because the
second clause does not expressly refer to an "insurance" benefit or payment, Hamilton
may be found to have violated that provision if he received *any kind* of "benefit or
payment," regardless of whether it was an *insurance* benefit or payment. We reject the
People's argument because it relies on an unreasonable reading of the plain statutory
language. Penal Code section 550, subdivision (b)(3) appears in Chapter 10 of Title 13
of the Penal Code titled "Crimes Against Insured Property and Insurers," and it consists
of a single sentence. In context, it is clear that the second clause's use of the phrase "any
benefit or payment" is merely a shorthand reference back to the "insurance benefit or
payment" that appears in the first clause. To violate either the first clause or the second
clause, Hamilton must have concealed or failed to disclose an event affecting an
*insurance* benefit or payment.

21

"insurance benefit or payment" as required by Penal Code section 550, subdivision (b)(3).[8]

The People also argue that if we decide not to modify the judgment to convictions under Penal Code section 550, subdivision (b)(3), we should at least modify the convictions to the misdemeanor crime of attempted petty theft by false pretenses (Pen. Code, §§ 484, 486, 488, 490.2, subd. (a), 532, 664). That crime involves theft of "money, labor or real or personal property" (Pen. Code, § 484) with a value not exceeding $950 (Pen. Code, § 490.2). However, the People make only a cursory argument in support of their position, and thus they make no attempt to establish that every instance of fraudulently obtaining compensation under California workers' compensation laws in violation of Insurance Code section 1871.4, subdivision (a)(1) *necessarily* constitutes the

---

[8]     The District Attorney's amicus brief argues that we should modify the judgment to a conviction under Penal Code section 550, subdivision (b)(1). However, we reject the argument because a conviction under that provision suffers from the same insufficiency of the evidence problem in this case as a conviction under Penal Code section 550, subdivision (b)(3). The provision that the District Attorney identifies makes it a crime to "[p]resent or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit *pursuant to an insurance policy*, knowing that the statement contains any false or misleading information concerning any material fact." (Pen. Code, § 550, subd. (b)(1), italics added.) As we have explained, the benefits and payments provided by the federal government under FECA derive from funds in the United States Treasury, not from an insurance policy.

crime of attempted petty theft.[9] Even were we to conclude that attempted petty theft by false pretenses is a lesser included offense of violating Insurance Code section 1871.4, subdivision (a)(1), we would not chose to exercise our discretion to modify the judgment to reflect convictions for attempted petty theft. The magnitude of fraud that Hamilton was alleged to have committed was far greater than three counts of misdemeanor attempted petty theft, as reflected by the restitution order of $11,972. As principles of double jeopardy would not prevent federal authorities from initiating a prosecution or administrative proceeding in a federal forum to redress Hamilton's wrongful acts,[10]

---

[9] For one thing, the issue becomes complicated because compensation under the California workers' compensation laws is not limited to the payment of money in the form of wage replacement, but also includes the provision of medical treatment by an employer. (Lab. Code, § 4600, subd. (a).) The People have not attempted to establish that obtaining such compensation by false pretenses qualifies as the theft of "money, labor or real or personal property." (Pen. Code, § 484.)

[10] "The Double Jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.' . . . Importantly, however, there are limits to the reach of the protection afforded by this language. . . . [U]nder the doctrine of Dual Sovereignty, a state prosecution does not bar a subsequent federal prosecution for the same conduct. . . . The doctrine, articulated by the Supreme Court in *Bartkus v. Illinois* [(1959) 359 U.S. 121, 137] and *Abbate v. United States* [(1959) 359 U.S. 187, 194] is a recognition of the fact that the states and the federal government are separate sovereigns, with distinct interests in criminalizing and prosecuting certain conduct." (*U.S. v. Piekarsky* (3d Cir. 2012) 687 F.3d 134, 149, citations omitted.) We note that the United States Supreme Court has pending before it a case which presents the issue of whether the separate sovereigns doctrine under the Double Jeopardy clause should be reexamined. (*United States v. Gamble*, (2017, 16-16760) [nonpub. opn.], cert. granted *sub nom. Gamble v. United States* (June 28, 2018, No. 17-646) __ U.S. __ [138 S.Ct. 2707].)

assuming it is brought in a timely manner,[11] and such a proceeding would be more appropriate to the magnitude of the allegations against Hamilton, we decline to exercise our discretion to modify the judgment to convictions for attempted petty theft.

DISPOSITION

The judgment is reversed.

IRION, J.

WE CONCUR:

HALLER, Acting P. J.

DATO, J.

---

[11]    Unless otherwise provided, the general statute of limitations for crimes set forth in Title 18 of the United States Code is five years.  (18 U.S.C. § 3282)